IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARSHAD AL-SABUR, on behalf of himself and others similarly situated, | ) ) ) | CASE NO. 2:18-cv-957 |
| Plaintiff, | ) ) | JUDGE GEORGE C. SMITH |
| vs. | ) ) ) | MAGISTRATE JUDGE VASCURA |
| ADS ALLIANCE DATA SYSTEMS, INC., | ) ) | **PARTIES' JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT** |
| Defendant. | ) | |

I. **INTRODUCTION**

Representative Plaintiff, Arshad Al-Sabur ("Representative Plaintiff"), and Defendant, ADS Alliance Data Systems, Inc., respectfully move this Court for an Order approving the Fair Labor Standards Act ("FLSA") settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as **Exhibit A**.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the FLSA, 29 U.S.C. §§ 201-219. Representative Plaintiff asserted that Defendant unlawfully excluded shift differentials and/or alleged non-discretionary bonus payments ("Additional Remuneration") that it paid to some of its hourly employees in its Cards Services line of business in determining their regular rates for purposes of computing overtime compensation. Representative Plaintiff asserted, and Defendant has denied, that this failure resulted in Defendant's miscalculation and underpayment of overtime compensation it paid to these hourly employees.

If approved by the Court, the Settlement will provide for the issuance of notice to all individuals identified in Appendix 1 to Exhibit A, who are current and former employees of Defendant in its Alliance Data Cards Services line of business who received a base hourly wage

and Additional Remuneration during any workweek that they worked over 40 hours in any workweek between October 22, 2015 and May 24, 2019 ("Eligible Settlement Participants") within 25 business days of approval. A copy of this proposed notice of settlement with an attached consent and release form ("Consent and Release Form") is attached as **Exhibit B**. Eligible Settlement Participants will have 60 days to join the Settlement by executing and returning a Consent and Release Form. Because the proposed Settlement is an FLSA *opt-in* settlement, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, no fairness hearing is required or requested by the Parties.[1]

The Settlement was reached by experienced counsel during arms-length, good faith negotiations after the parties exchanged the necessary information and documentation to perform individual damages calculations.

The settlement documents submitted for approval or entry by the Court consist of the following:

| | |
|---|---|
| **Exhibit A:** | **Joint Stipulation of Settlement and Release with Exhibits.** |
| **Exhibit B:** | **Proposed Notice of Settlement of Lawsuit, with attached Consent and Release Form** |
| **Exhibit C:** | **General Settlement and Release Agreement for Mr. Al-Sabur** |
| **Exhibit D:** | **Proposed Order of Dismissal and Approving Settlement** |
| **Exhibit E:** | **Declaration of Matthew J.P. Coffman** |
| **Exhibit F:** | **Declaration of Shannon M. Draher** |

---

[1] *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Action and Settlement

Representative Plaintiff filed this action on August 27, 2018. He alleged that Defendant maintained a companywide policy of failing to include certain forms of Additional Remuneration payments when calculating its employees' regular rates of pay for the purposes of overtime, which resulted in Plaintiffs not being paid at the correct overtime rates. Opt-In Plaintiff Anthony Qualls ("Opt-In Plaintiff") joined this matter on the same date that the Complaint was filed. (Coffman Declaration, ¶ 9; Draher Declaration, ¶ 8). Defendant answered the Complaint and denied any liability or wrongdoing of any kind.

On October 22, 2018, the parties filed a joint motion to conditionally certify the case as a collective action under § 216(b) on behalf of Representative Plaintiff and others similarly situated, defined as:

> All current and former hourly, non-exempt employees of Defendant in its Alliance Data Cards Services line of business, who received a Base Hourly Wage and Additional Remuneration1 during any workweek that they worked over 40 hours in any workweek beginning three years preceding the filing date of this stipulation and proposed order and continuing through the date of final disposition of this case (the "§ 216(b) Collective Class" or the "§ 216(b) Collective Class Members").

The parties further agreed to delay sending notice to the putative class members pending the exchange of necessary information and documentation to assess Plaintiffs' claims and potential damages. The Parties held numerous conferences related to the information exchanged and the

Plaintiffs' alleged damages over the course of approximately five months.  (Coffman Declaration, ¶¶ 12-14; Draher Declaration, ¶¶ 11-14).

For purposes of assessing the putative class' alleged damages, Defendant initially produced payroll data from October 2015 to October 2018 for the entire putative class, and later supplemented with payroll data through May 24, 2019.  After receiving the data, Plaintiffs' Counsel, in conjunction with their data analyst, computed the putative class' alleged overtime damages. (Coffman Declaration, ¶ 13; Draher Declaration, ¶ 12).

Once the damages calculations were complete, the Parties engaged in numerous additional discussions. As a result of the discussions, the Parties were able to reach a fair and reasonable settlement of the claims asserted in the pending action to avoid the expense and burden of litigation.  (Coffman Declaration, ¶¶ 14-15; Draher Declaration, ¶¶ 13-14).

### B. The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff, all current opt-in plaintiffs, and all of the Eligible Settlement Participants identified in Appendix 1 of the Settlement who timely execute and return Consent and Release Forms (collectively "Class Members"). (*See* Exhibit A).  The total eligible settlement amount is $525,000.00 ("Total Eligible Settlement Payment"), which sum will cover: (a) all of the payments to individuals as reflected in Appendix 1 to the Settlement who elect or have elected to participate in the settlement by signing and returning Consent and Release Forms ("Individual Payments"); (b) Representative Plaintiff's Class Representative Payment and Opt-In Plaintiff's Incentive Payment; and (c) Plaintiffs' Counsel's attorneys' fees and expenses.  In addition to the Total Eligible Settlement Payment, Defendant will also pay all costs associated with the settlement to the third-party administrator, CPT Group.  Plaintiffs' Counsel believes the proposed Settlement is in the best interests of all

4

Class Members as they will be receiving approximately 145% of their alleged unpaid overtime damages. (Coffman Declaration, ¶ 18; Draher Declaration, ¶ 17).

$330,204.25 of the Total Eligible Settlement Payment will be designated for Individual Payments to all current opt-in Plaintiffs and Eligible Settlement Participants based on their alleged overtime damages as calculated by Plaintiffs' Counsel. (*See* Exhibit A, Appendix 1). Any Individual Payments designated for Eligible Settlement Participants who do not execute and return Consent and Release Forms will be retained by Defendant.

In addition, $12,500.00 of the settlement amount will be paid to Representative Plaintiff as a Class Representative Payment in exchange for his services as class representative and for executing a General Settlement and Release Agreement of all his individual claims against Defendant (**Exhibit C**), which is in addition to his individual payment. Moreover, $2,500 will be paid to Opt-In Plaintiff as an Incentive Payment, in addition to his individual payment. Both Representative Plaintiff and Opt-In Plaintiff were instrumental in the resolution of Plaintiffs' claims. $179,795.75 of the settlement amount will be paid to Plaintiffs' Counsel for attorneys' fees and expenses ($175,000.00 in fees and $4,795.75 in expenses) incurred in the Action. (Coffman Declaration, ¶ 22; Draher Declaration, ¶ 21).

Each Eligible Settlement Participant will be required to execute a Consent and Release Form as a condition to receiving his or her settlement payment. To inform Eligible Settlement Participants of the Settlement, the Parties have submitted, as Exhibit B, the proposed Notice of Settlement of Lawsuit, with an attached Consent and Release Form. The Notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendant, and any updated addresses obtained by Class Counsel. The Eligible Settlement Participants who timely sign and return a Consent and Release Form will participate in the Settlement and their claims will be released.

In exchange for these payments and other consideration provided for in the Agreement, the Complaint will be dismissed with prejudice, and the Class Members (which, again, will only include individuals who have signed and timely returned a Consent and Release Form) will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in the Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act, and any applicable state wage statute where the Class Members may have worked for Defendant, including but not limited to the Ohio Minimum Fair Wage Standards Act for the Released Period, which is defined as the period of October 2015 to May 24, 2019. A proposed Order of Dismissal and Approving Settlement is attached hereto as **Exhibit D**.

### III.  THE PROPRIETY OF APPROVAL

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declarations of Matthew J.P. Coffman and Shannon M. Draher, and as explained below, Court approval is warranted on all scores.

#### A.  The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v.*

6

*Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.  As shown below and in the Declarations of Shannon M. Draher and Matthew J.P. Coffman, this standard supports approval of the Settlement.

### 1) No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid overtime.  The Agreement was achieved only after arms-length and good faith negotiations between the Parties. (Coffman Declaration, ¶¶ 12-14; Draher Declaration, ¶¶ 11-14). As such, there is no indicia of fraud or collusion.

### 2) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of collective actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims.  Plaintiffs claim that Defendant did not pay overtime at the correct rate of pay when certain types of additional remuneration were also earned.  Defendant denies Plaintiffs' claims.  In addition, the Parties continue to disagree about whether the two-year limitations period

7

for non-willful violations or three-year limitations period for willful violations applied, as well as the amount of liquidated damages, if any, that would be awarded.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Coffman Declaration, ¶ 28; Draher Declaration, ¶ 26).

### 3) Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation and discovery prior to negotiating the Settlement. Prior to filing the Action, Plaintiffs' Counsel performed a factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant. After filing the Action, the Parties engaged in informal discovery. Thus, the legal issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4) The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all. (Coffman Declaration, ¶¶ 27-29 ; Draher Declaration, ¶¶ 26-28).

### 5) Uncertainty of Recovery Supports Approval

Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeeded on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties disagree.

### 6) Experienced Counsels' Views Favor Approval

The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Counsel support the Settlement as fair and reasonable, and in the best interest of the Plaintiffs as a whole, as described in the Declarations of Matthew J.P. Coffman and Shannon M. Draher. (*See* Coffman Declaration; Draher Declaration).

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for the Plaintiffs.

### 1) The Individual Payments Are Reasonable and Adequate

All Individual Payments have been calculated proportionally on each Class Members' alleged overtime damages during the Released Period. (Coffman Declaration, ¶ 18; Draher Declaration, ¶ 17). Pursuant to the Settlement, each Class Member will receive alleged overtime compensation for Defendant's alleged failure to include Additional Remuneration in determining the regular rates for overtime compensation.

### 2) Representative Plaintiff's and Opt-In Plaintiff's Service Awards Are Proper and Reasonable

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

9

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)).  See also *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Representative Plaintiff and Opt-In Plaintiff contributed significant time, effort, and detailed factual information enabling the Parties to successfully resolve this matter.  In addition, Representative Plaintiff has agreed to execute a general release of all his individual claims and potential claims against Defendant (Exhibit C).  Their time and efforts support the requested service payment.  (Coffman Declaration, ¶¶ 20-21; Draher Declaration, ¶¶ 19-20).

### 3)   The Attorneys Fees and Expenses to Plaintiffs' Counsel Are Proper and Reasonable

After the Court has confirmed that the terms of settlement are fair to Plaintiffs, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel.  The

10

Settlement reflects Defendant's agreement to pay Plaintiffs' Counsel $179,795.75 in attorneys' fees and costs ($175,000.00 in attorneys' fees and $4,795.75 in costs). This amount represents one-third of the total eligible settlement amount plus the costs and expenses incurred in prosecuting this case.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir. 1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more

11

accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. As discussed above, each Eligible Settlement Participant who participates in the Settlement will receive approximately 146% of their alleged overtime damages. Therefore, the attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiffs and the Class.

The attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring

12

competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Plaintiffs were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants approval.

Expenses are estimated to be approximately $4,795.75. All expenses were incurred during the course of the litigation of this Action or will be incurred during the administration of the Settlement and will be paid by Defendant. (Coffman Declaration, ¶ 25; Draher Declaration, ¶ 24).

## IV. CONCLUSION

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement as attached as Exhibit D.

Dated: July 10, 2019

Respectfully submitted,

| | |
|---|---|
| */s/ Shannon M. Draher* | /s/ *Gilbert P. Brosky* |
| Shannon M. Draher (0074304) | Gregory V. Mersol (0030838) |
| Hans A. Nilges (0076017) | Gilbert P. Brosky (0079855) |
| NILGES DRAHER LLC | Dustin M. Dow (0089599) |
| 7266 Portage Street, N.W. | BAKER & HOSTETLER LLP |
| Suite D | Key Tower; 127 Public Square, Suite 2000 |
| Massillon, OH 44646 | Cleveland, OH 44114-1214 |
| Telephone: (330) 470-4428 | Telephone: (216) 621-0200 |
| Facsimile: (330) 754-1430 | Facsimile: (216) 696-0740 |
| Email:sdraher@ohlaborlaw.com | Email: gmersol@bakerlaw.com |
| hans@ohlaborlaw.com | gbrosky@bakerlaw.com |
| | ddow@bakerlaw.com |
| | C*ounsel for Defendant* |

*/s/ Matthew J.P. Coffman*

Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com

/s/ *Daniel I. Bryant*

Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Counsel for Plaintiffs*